# In the United States Court of Federal Claims

No. 15-553C

(Filed: March 22, 2019)

| | | |
|---|---|---|
| ************************************* | ) | |
| **MICHELLE EBY,** | ) | Claim by federal employee for damages |
| | ) | attendant to breach of a settlement |
| **Plaintiff,** | ) | agreement; summary judgment; RCFC |
| | ) | 56(a); no genuine dispute as to any material |
| v. | ) | fact; discretionary promotion not a basis for |
| | ) | damages; receipt of a prior award from the |
| **UNITED STATES,** | ) | EEOC provided plaintiff with complete |
| | ) | relief |
| **Defendant.** | ) | |
| | ) | |
| ************************************* | | |

Jack Jarrett, Alan Lescht & Associates, P.C., Washington, D.C., for plaintiff.

Jana Moses, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Reginal T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Plaintiff Michelle Eby seeks damages for breach of contract that occurred when the National Institute of Health ("NIH") allegedly violated the terms of a settlement agreement between Ms. Eby and NIH.  *See Eby v. United States*, 133 Fed. Cl. 706 (2017).  Ms. Eby and NIH entered into the settlement agreement in April 2010 to resolve a pending employment discrimination claim filed by Ms. Eby with the Equal Employment Opportunity Commission ("EEOC" or "the Commission") against NIH.   Subsequently, Ms. Eby filed a retaliation claim in December 2011 with the Commission alleging that NIH violated the settlement agreement when it gave Ms. Eby a negative reference in connection with her unsuccessful application in June 2010 for a position with the Food and Drug Administration ("FDA").

An administrative judge of the Commission held a hearing on July 29, 2013, on Ms. Eby's retaliation claim, but a decision was not timely rendered.  On May 25, 2015, in the absence of a decision by the Commission, Ms. Eby filed a complaint in this court.  Roughly 22 months later, in March 2017, the Commission ruled in favor of Ms. Eby, and granted her back pay, interest, fringe benefits, compensatory damages, and job placement.  *Eby*, 133 Fed. Cl. at

710-11.  Following the Commission's decision, the United States (the "government") moved to dismiss Ms. Eby's complaint for mootness due to the relief awarded by the Commission.  *See* Def.'s Mot. to Dismiss, ECF No 39.  At that time, however, Ms. Eby had not received compensation for back pay, interest, and fringe benefits, and she did not know how much back pay would be awarded.  Accordingly, the court denied the government's motion to dismiss.  *Eby*, 133 Fed. Cl. at 711.

By June 2018, Ms. Eby had received the relief ordered by the EEOC but maintained that her claim remained viable due to NIH's failure to consider the back pay that Ms. Eby would have received upon being promoted from GS-13 to GS-14 by June 2012.  *See* Joint Status Report (June 18, 2018), ECF No. 49.  The court ordered Ms. Eby to explain why her case should not be dismissed in light of *Bowden v. United* States, 106 F.3d 443, 440 (D.C. Cir. 1997), which held that the Back Pay Act does not cover discretionary promotions.  *See* Order to Show Cause (June 20, 2018), ECF No 50.  Ms. Eby responded by explaining that her claim for damages in excess of the Commission's award remained under a contract theory as part of expectancy damages and not under the Back Pay Act, but that the Commission was limited to the Back Pay Act in fashioning relief.  Pl.'s Resp. to Order to Show Cause Why Case Should Not be Dismissed as Moot at 3-5, ECF No. 51.  After hearings on June 27, 2018, and August 9, 2018, the parties stipulated to basic facts, *see* Joint Status Report (July 18, 2018) ("Joint Stipulations"), ECF No. 57, and the court permitted limited discovery into whether and when Ms. Eby would have been promoted, *see, e.g.*, Scheduling Order of Aug. 9, 2018, ECF No. 59.

After discovery closed, the government filed a motion for summary judgment on December 7, 2018.  Def.'s Mot. for Summ. Judgment ("Def.'s Mot."), ECF No. 64.  The government contends that Ms. Eby cannot as a legal matter succeed on her claim that she should be awarded additional damages beyond those ordered by the Commission, based upon the prospect that she would have been promoted to a more highly paid position.  *See id.* at 5-6.  Appended to the government's motion were seven exhibits: a job announcement ("DX 1"); 15 notifications of personnel actions for FDA officials ("DX 2"); the Commission's May 2013 decision regarding Ms. Eby's first EEOC complaint ("DX 3"); the Commission's October 2016 decision regarding Ms. Eby's second EEOC complaint ("DX 4"); the Commission's order of March 2017 entering judgment ("DX 5") and regarding attorneys' fees ("DX 6"); and the computation of Ms. Eby's back pay ("DX 7").  *Id.* Attach. 1 at A1-A68.[1]

Ms. Eby responded with a cross-motion for summary judgment on December 28, 2018, addressing her claim for additional damages based on potential promotion.  Pl.'s Cross-Mot. for Summ. Judgment & Opp'n to [Def.'s Mot.] ("Pl.'s Cross-Mot."), ECF No. 67.  Appended to her cross-motion were 16 exhibits, many of which duplicate the government's exhibits, but she also included her affidavit dated December 28, 2018 ("PX 1"), federal employee profiles obtained from www.federalpay.org for four employees of FDA's Office of Hematology and Oncology Products ("PXs 4 through 7"); federal employee profiles obtained from www.federalpay.org and notices of personnel actions for eight other employees in the two Oncology Products Divisions

---

[1]The government's exhibits are individually numbered and the pages are collectively numbered sequentially starting with A1.  The government's exhibits will be referred to by DX followed by the exhibit number and page number (*e.g.*, DX 1 at A1).

("PXs 8 through 15"); and an office chart for the FDA's Office of Hematology and Oncology Products, which shows the Office's divisions ("PX 16"). *Id.* Attach. 1 at 1-82.[2]

Following completion of briefing, and after a hearing on March 14, 2019, the cross-motions are ready for disposition.

The court finds that there is no factual dispute material to the controlling legal standard and that the government is entitled to judgment as a matter of law. Accordingly, the government's motion for summary judgment is GRANTED and Ms. Eby's cross-motion is DENIED.

## BACKGROUND[3]

Ms. Eby began working for NIH in June 1989. *Eby*, 133 Fed. Cl. at 707. In September 2001, NIH promoted Ms. Eby to a Senior Clinical Research Pharmacist at the GS-13 level. Pl.'s Reply Ex. 1 (Aff. of Michelle Eby (Mar. 8, 2019) ("Eby Aff.")) ¶ 3. She was promoted to GS-14 two years later. Eby Aff. ¶ 4. In October 2009, Ms. Eby filed a disability discrimination claim with the Commission against NIH. *Eby*, 133 Fed. Cl. at 707. Subsequently, the two parties entered into a settlement agreement in April 2010. *Id.* The settlement agreement resulted in the termination of her employment with NIH but required the agency to provide Ms. Eby with "a neutral reference upon request by prospective employers," and specified that a senior supervisor would provide a letter of reference, the contents of which were specified verbatim in the settlement agreement. *Id.* Apart from the information specified in the settlement agreement, NIH would provide no further information to prospective employers beyond Ms. Eby's start date with the agency, her official position, title, salary, name of organization, location, and the date of her resignation. *Id.* In April 2010, Ms. Eby resigned as a Senior Clinical Research Pharmacist with the NIH in accordance with the terms of the settlement agreement. Joint Stipulations ¶ 1.

Concurrent with Ms. Eby's resignation, she applied for a Project Coordinator position with FDA's Division of Drug Oncology Products. Joint Stipulations ¶ 2; DX 1 at A2. The position was advertised at the GS-12 and GS-13 grade levels as a "Regulatory Health Project Coordinator / Manager," with a maximum grade level of GS-13. Joint Stipulations ¶ 2; DX 1 at A1-A2. The announcement did not specify the difference between the Project Coordinator and Project Manager position, but explained the additional experience required to be eligible for the GS-13 level over that of a GS-12. DX 1 at A2-A3. Based on contact with a supervisor in the Division of Drug Oncology Products, Ms. Eby believed she "could be promoted to a GS-14 position within a couple of years." Eby Aff. ¶¶ 8, 9.

Ms. Eby was not selected for the position after the FDA contacted NIH for an employment reference. Joint Stipulations ¶ 3; DX 4 at A40. That failure prompted her to file a

---

[2]Ms. Eby's exhibits are individually numbered and the page numbering resets for each exhibit. Her exhibits will be referred to by PX followed by the exhibit number and page number as assigned by ECF for the motion's attachment (*e.g.*, PX 1 at 1).

[3]The recitation that follows is taken from the Joint Stipulations, the parties' pleadings, their competing motions for summary judgment, the documentary materials submitted with the parties' motions, and previous opinions and orders related to this case.

retailiation claim with the Commission in December 2011. *Eby*, 133 Fed. Cl. at 707. Ms. Eby was subsequently hired by the FDA in April 2012 into a position as a Consumer Safety Officer at GS-13 Step 10. Joint Stipulations ¶ 5. Ms. Eby knew she could not advance past GS-13 in this position, and by late 2014, she began looking for other opportunities to advance. Eby Aff. ¶¶ 13-18. She thereafter shifted in January 2017 into a Health Science Administrator position at FDA, also rated at GS-13 Step 10. Joint Stipulations ¶ 6. Ms. Eby's supervisor conveyed that Ms. Eby "would likely" be promoted within two years to GS-14 contingent on good performance, which promotion occurred in January 2019. Eby Aff. ¶¶ 21-24.

A hearing on Ms. Eby's claim before the Commission was held in July 2013, *Eby*, 133 Fed. Cl. at 707, and the Commission's Administrative Judge determined in October 2016 that the contents of the reference a NIH official provided to the FDA constituted reprisal for participation in protected EEO activity, *i.e.*, for Ms. Eby's having filed the 2009 complaint. Joint Stipulations ¶¶ 4, 7; DX 3 at A28; DX 4 at A51. A final decision of the Commission was entered in March 2017, and after a further delay, Ms. Eby received $56,219.84 in back pay inclusive of interest and fringe benefits, compensatory damages of $15,000, attorneys' fees and costs totaling $26,334.90, and 380 hours of annual leave. Joint Stipulations ¶¶ 7, 8; DX 7 at A68. The Commission had specified the amount of damages except for back pay. *E.g.*, PX 2 at 25-30. Back pay was subsequently determined by NIH at the GS-13 Step 10 level, Joint Stipulations ¶ 8, the maximum level to which Ms. Eby could have been employed in the Project Coordinator / Manager position, Joint Stipulations ¶ 2; DX 1 at A1-2. The back pay amount accounted for the difference in pay between GS-13 Step 10 pay and Ms. Eby's actual earnings during the interval between when she could have been hired as Program Coordinator and when FDA hired her as a GS-13 Step 10 Consumer Safety Officer, *i.e.*, between July 3, 2010, and April 21, 2012. DX 7 at A68.[4] The Commission's decision in March 2017 also ordered NIH to place Ms. Eby into a Project Coordinator position or comparable position at FDA, Joint Stipulations ¶ 7, but Ms. Eby opted to stay in her current FDA position, Joint Stipulations ¶ 9.

The documentary materials submitted by the parties in support of their cross-motions for summary judgment focus on the grade levels of FDA employees and the promotion record of those employees. Between May 29, 2009, and December 7, 2018, 15 personnel employment actions involved FDA employees in a Project Manager or Project Coordinator position within the Office of Hematology and Oncology Products' two divisions of Oncology Products. DX 2 at A9-A23; *see also* Pl.'s Cross-Mot. at 3 & n.1. Two employees retired or resigned as Project Managers. DX 2 at A16, A20. Two Project Managers transferred to other FDA offices, keeping their same grade and step. DX 2 at A9, A11. The remaining 11 received promotions. Eight GS-13 Project Managers were promoted to GS-14 Senior Project Manager positions, but each took a reduction of one to four steps. DX 2 at A10, A12-A15, A17, A18, A23. Two GS-13 Project Managers were promoted to two other GS-14 positions, as a Consumer Safety Officer position and a General Health Scientist, respectively, and took a reduction of one to two steps. DX 2 at A19, A21. One GS-12 Project Coordinator was promoted to a GS-13 Project Manager position after one year, DX 2 at A22; PX 8 at 47, and was subsequently among the eight promoted to the GS-14 Senior Project Manager position, which occurred after approximately 15 months, PX 8 at 47-48. Of the 11 promotions, all eight promotions from GS-13 Project Managers to GS-14

---

[4]NIH's calculations assume that Ms. Eby would have been hired in July 2010 as a GS-13 Step 10.

Senior Project Managers and both promotions of GS-13 Project Managers to other GS-14 positions occurred as competitive promotions, DX 2 at A10, A12 to A15, A17 to A19, A21, A23, while the one promotion from GS-12 to GS-13 was a career promotion, DX 2 at A22.  The record of personnel actions provided by the government shows that all Project Managers were GS-13s.  *See* DX 2 at A9-A23.  The one Project Coordinator was a GS-12 and his promotion to GS-13 and reclassification as a Project Manager occurred concurrently.  PX 8 at 47-48.

Within the wider Office of Oncology and Hematology Products, at least four other GS-13 employees were promoted to GS-14 positions, all after approximately two years, *see* Pl.'s Cross-Mot. at 3-4; PXs 4-7 at 35 to 45, though details of the original and new positions or of the type of promotion are not evident.

## STANDARDS FOR DECISION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party.  *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), which requires the movant to "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A).   The court may consider other materials in the record even if not cited by the movant.  RCFC 56 (c)(3).  "[T]he inferences to be drawn . . . must be viewed in the light most favorable to party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When the parties have cross-moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citations omitted).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other."  *Id.*  "To the extent there is a genuine issue of material fact, both motions must be denied."  *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

## ANALYSIS

A.  *Certainty of Promotion & Computation of Damages*

NIH's back pay calculations assumed that financial harm to Ms. Eby ceased in April 2012 when the FDA hired her as a GS-13 Step 10. Ms. Eby contends, however, that by approximately July 2012, two years after she should have been hired by the FDA as a Project Coordinator, she would likely have been promoted to a GS-14 Step 7 position. Pl.'s Mot. at 1; Joint Status Report (June 18, 2018). Ms. Eby relies on personnel records showing that 14 GS-13 Program Managers in the Office of Hematology and Oncology Products received promotions to GS-14 within approximately two years of becoming GS-13s. *E.g.*, Pl.'s Cross-Mot. at 3-6. Ms. Eby also submits her own experience with FDA's hiring and promotion practices. *See* Eby Aff. ¶¶ 22-25. Accordingly, Ms. Eby claims back pay constituting the difference between GS-13 Step 10 and GS-14 Step 7 between July 2012 and at least March 2017, when she declined to transfer from her current position. Pl.'s Cross-Mot. at 1; Hr'g Tr. at 8:8 to 9:10 (Jun. 27, 2018). Because the Back Pay Act does not allow an award based on a discretionary promotion and the Back Pay act constrains the relief the Commission could afford, Ms. Eby contends the relief already afforded to her does not preclude this court from granting additional damages under a contract theory, *i.e.*, for breach of the settlement agreement. *See, e.g.*, Joint Status Report (June 18, 2018).

The government disputes the certainty of a promotion after two years, noting that the GS-14 positions to which others were promoted were different positions filled through a competitive process, and were contingent upon a vacancy occurring and an applicant possessing requisite skills. Def.'s Mot. at 10. The government argues that Ms. Eby "cannot prove that she was likely to receive a promotion . . . within two years if she had been hired for the [Program Coordinator] position in 2010." *Id*. at 6. Instead, the maximum grade to which she could have been promoted under the Program Coordinator position was GS-13, the rate at which she received back pay. *Id*. at 7.[5] The government contends that ascribing additional damages to the possibility of selection for a promotion based on a competitive process is too speculative to consider. *Id*. at 11.

"In general the same contract law is applied when the government is party to a contract as applies to contracts between private parties." *ACE Constructors, Inc. v. United States*, 499 F.3d 1357, 1360 (Fed. Cir. 2007) (citing *Mobil Oil Expl. & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607-08 (2000)). "The general rule in common law breach of contract cases is to award damages that will place the injured party in as good a position as he or she would have been [in] had the breaching party fully performed." *Estate of Berg v. United States*, 687 F.2d 377, 379 (Ct. Cl. 1982). The proper measure of damages, then, is usually the expectancy of the non-breaching party, *i.e.*, the benefit the non-breaching party "expected to receive had the breach not occurred." *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380 (Fed. Cir. 2001); *see also Restatement (Second) of Contracts* § 344(a) (1981). Expectancy damages "are recoverable provided they are actually foreseen or reasonably foreseeable . . . and are proved with reasonable certainty." *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355

---

[5]The government contends that "there is no evidence of any GS-13 Regulatory Health Project Coordinator being non-competitively promoted to a GS-14 position in the Division of Drug Oncology Products." Def.'s Resp. to Pl.'s Cross-Mot. for Summ. Judgment and Reply in Support of Def.'s Mot. for Summ. Judgment ("Def.'s Reply") at 9, ECF No. 73. The government further points out that "only Regulatory Health Project *Managers*—rather than Regulatory Health Project *Coordinators*—were promoted to GS-14 supervisory positions." *Id*. at 9-10 (emphasis in original).

(Fed. Cir. 2001); *accord Fifth Third Bank v. United States*, 518 F.3d 1368, 1374–75 (Fed. Cir. 2008). Although "contract law precludes recovery for speculative damages . . . especially . . . in suits against the United States," *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997) (citations omitted), with sufficient proof, "the trier of fact may increase [damages] to reflect the appropriate influence of individualized factors (such as foreseeable promotions)." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 536 (1983) (ruling in a suit between a private employer and an employee); *see also Richmond & Danville R.R. v. Elliott*, 149 U.S. 266 (1893) (ruling against basing damages on possible promotions in the absence of supporting facts, not on a general legal rule); *Estes v. Georgetown Univ.*, 231 F. Supp. 2d 279 (D.D.C. 2002) (same), *vacated pursuant to settlement agreement*.

That said, ordinarily for federal employees, "entitlement to pay and other benefits must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles." *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004) (quoting *Kizas v. Webster*, 707 F.2d 524, 535 (D.C. Cir. 1983) (alteration in original)). "Though a distinction between appointment and contract may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the distinction nevertheless prevails in government service." *Id.* (quoting *Kizas*, 707 F.2d at 535); *see also Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (quoting *Shaw v. United States*, 640 F.2d 1254, 1260 (Ct. Cl. 1981)) ("[T]he law is well settled that, 'public employment does not, . . . give rise to a contractual relationship in the conventional sense.'") (alteration in original) (citations omitted).[6] This case, however, is not necessarily subject to the constraints of a federal appointment to a position because it rests on a claim for breach of contract, *i.e.*, of the settlement agreement, which exists separate and apart from Ms. Eby's appointment to positions with the FDA. Therefore, the court must consider the parties' evidentiary postulates regarding Ms. Eby's possible promotion during the relevant years.

Here, selection of a GS-13 Project Coordinator to any GS-14 position was a competitive promotion properly within FDA's discretion. The maximum promotion potential for the Project Coordinator and Project Manager positions was GS-13. DX 1 at A1. The FDA had no obligation to promote any Project Coordinator or Manager past GS-13 nor any obligation to promote the employee into another GS-14 position. At most, Ms. Eby had a reasonable

---

[6]Two decisions by the Federal Circuit involving actions of the Merit Systems Protection Board are also instructive. *Boese v. Department of the Air Force*, 784 F.2d 388 (Fed. Cir. 1986), and *Naekel v. Department of Transp., F.A.A.*, 850 F.2d 682 (Fed. Cir. 1988), involved federal employees seeking reinstatement that accounted for an expected promotion. The court in *Boese* upheld the decision of the Merit Systems Protection Board to not award promotion as part of reinstatement because the plaintiff's argument for promotion was "based on flimsy possibilities unsupported by any hard facts or evidence," *Boese*, 784 F.2d at 390, thus implying that entitlement to promotion is a factual determination. The court reached a similar result for similar reasons in *Naekel*. 850 F.2d at 683-84. The decisions in both *Boese* and *Naekel* suggest that a promotion, and back pay based on that promotion, may be granted where the facts show it was either required or nearly certain, making the issue one of fact and not of law. The plaintiffs in *Boese* and *Naekel*, unlike Ms. Eby, brought reinstatement claims and did not bring their claims under contract theories.

expectation of promotion based on office custom, perhaps confirmed by representations of prospective supervisors. But however reasonable the expectation, such an expectation cannot bind the government. *Adams*, 391 F.3d at 1221 (quoting *Kizas*, 707 F.2d at 535) ("[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel. These cases have involved, *inter alia,* promises of appointment to a particular grade or step level, promises of promotion upon satisfaction of certain conditions, . . . and promises of other employment benefits."); *see also Chu*, 773 F.2d at 1229 (quoting *Shaw*, 640 F.2d at 1260 ("Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.") (citations omitted). Had the settlement agreement been properly implemented and Ms. Eby been duly appointed as a Program Coordinator in July 2010, FDA's failure to promote Ms. Eby after two years would not be compensable despite past practices or any representations made to her. *See Adams*, 391 F.3d at 1221; *Chu*, 773 F.2d at 1229.

Instead, a federal employee is "entitled to receive only the salary of the position to which [s]he was appointed, even though [s]he . . . claims that [s]he should have been placed in a higher grade." *United States v. Testan*, 424 U.S. 392, 406 (1976). "A retroactive promotion and back pay are appropriate for a duly *authorized* position *if a mandatory personnel policy . . . required promotion*," or in a competitive promotion process where the facts "clearly establish that the employee would have been selected." *Naekel*, 850 F.2d at 683-84 (some emphasis added). Assuming the government breached the settlement agreement and the breach caused the FDA to not hire Ms. Eby, Ms. Eby was wrongfully deprived of a GS-13 position and thus entitled to the salary of that position. No set of additional facts can change the result that Ms. Eby would not have been *entitled* to a discretionary, not a mandatory, promotion. Being wrongfully denied one position cannot be used to further claim that the employee was duly authorized to hold a higher position that is contingent on the government's discretion. Anticipating this argument, Ms. Eby argues that a "duly appointed" requirement or a mandatory promotion requirement is inapposite to this case. Pl.'s Cross-Mot. at 9. Even so, although the contract at issue is not an employment contract, but rather Ms. Eby's settlement agreement, the general principles governing the government's relations with its employees must still apply.

Ms. Eby can advance a contract claim for breach of the settlement agreement to the extent the breach cost her a job for which she would have been duly appointed but for the breach. Nonetheless, her compensable expectancy under a contract theory is in the position denied, not to a potential for a discretionary promotion. Ms. Eby is at most entitled to relief at the GS-13 step 10 level, the highest position to which she could have been duly appointed had NIH not breached the settlement agreement. This is precisely the back pay calculated by NIH in light of the relief mandated by the Commission. Expectancy damages based upon a potential discretionary promotion to which she was neither duly appointed nor would have been appointed cannot fall within that claim. Because the promotion claim is the only basis for damages still at issue in this case, this court can afford no further relief.

Therefore, under the facts of this case as applied to the plaintiff's claim based on a contract theory, the court finds that Ms. Eby cannot show an entitlement to promotion to GS-14 at any time before March 2017.

B. *Liability for Breach of Contract*

Ms. Eby argues that the Commission's decision in her favor precludes the government from re-litigating the issue of liability under the doctrine of collateral estoppel. Pl.'s Cross-Mot. at 6. That argument is academic. Because the government is entitled to judgment that Ms. Eby cannot recover damages relating to promotion, the court can afford no further relief in light of what the Commission has already awarded. Therefore, based upon the Joint Stipulations and the further factual submissions by the parties as to which there are no genuine issues of material fact, the court may grant the government's motion for summary judgment.

## CONCLUSION

For the reasons stated, the government's motion for summary judgment is GRANTED and Ms. Eby's cross-motion for summary judgment is DENIED. Accordingly, the case is dismissed. The Clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge